UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SAVE SAN FRANCISCO BAY ASSOCIATION,** *et al.*,<br><br>           **Plaintiffs,**<br><br>     v.<br><br>**UNITED STATES DEPARTMENT OF THE INTERIOR,** *et al.*,<br><br>           **Defendants.** | **CIV-F-97-6140 OWW/DLB**<br>**CIV-F-98-5261 OWW/DLB**<br><br>**MEMORANDUM DECISION AND ORDER RE SAN LUIS & DELTA-MENDOTA WATER AUTHORITIES' APPLICATION FOR FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT, 28 U.S.C. 2412(d)(1)(A) (DOC. 573)** |
| **SAN LUIS & DELTA-MENDOTA WATER AUTHORITY AND WESTLANDS WATER DISTRICT**<br><br>           **Plaintiffs,**<br><br>**UNITED STATES DEPARTMENT OF THE INTERIOR,** *et al.*<br><br>           **Defendants.** | |

I.  **INTRODUCTION**

     San Luis & Delta-Mendota Water Authority ("Plaintiff" or "the Authority") moves for an award of attorney's fees and litigation expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A).  The Authority initially sought an award of $724,919.46.  (Doc. 548.)  The district court issued a memorandum decision and order regarding that initial fee request, which (1) held that the Authority was only entitled to a fraction

1

of the fees requested and (2) ordered the Authority to submit supplemental documentation containing a more "specific breakdown of legal fees, services, and costs." (Doc. 567.) The Authority submitted a revised fee request for "$327,915.02 in CPI-adjusted EAJA fees and costs." (Doc. 569 at 2.) The Authority concedes, however, that it is unable to provide all of the supplemental documentation the court requested. Federal defendants object to the revised request. (Doc. 572.)

## II. **PROCEDURAL HISTORY**

The lengthy procedural history of this litigation is set forth in great detail in numerous memoranda decisions issued by the district court, including a prior decision on the Authority's fee request (Doc. 572, the "preliminary decision"), and a more recent memorandum opinion and order on environmental plaintiffs' fee request (Doc. 641). For the purposes of this motion, a brief summary of the preliminary decision regarding the Authority's petition is sufficient. That reasoning and legal analysis is made a part of this final decision.

The preliminary decision examined several threshold issues. First, although the Authority's success was limited, the Authority could be considered a "prevailing party" for purposes of the EAJA:

> In this case, Plaintiff's bedrock claim that the 1928-34 drought regime should be the measuring criterion for yield calculation did not succeed. Nor did Plaintiffs succeed on Interior's interpretation of treatment of water used for (b)(2) ESA or water quality purposes. Plaintiff prevailed on two of the five discrete issues concerning the accounting rules adopted by Interior for CVPIA § 3406(b)(2). This is limited success. Plaintiff can be considered a prevailing party only in a substantively qualified sense.

2

(Doc. 567 at 30.)

Second, the requirement that there be an absence of "substantial justification" for the government's position was satisfied. With respect to those issues decided in the Authority's favor, the government's position was <u>not</u> substantially justified; specifically, the government's "reset methodology" was "an effort to circumvent clear limits on water allocation, its conduct was not reasonable," and "[o]ffset cannot be considered reasonable or substantially justified." *(Id.* at 36-37.) In addition, Interior's treatment of water flows related to the Auburn Dam, "violat[d] express statutory language" and was therefore not substantially justified. (*Id.* at 38.) The federal defendants' argument that a government action is substantially justified if a "genuine dispute exists," was rejected because the record indicated that Interior was actually attempting to use its "interpretive discretion to re-write the statute." (*Id.* at 37.)

The Authority's request for reimbursement of all recoverable costs in the amount of $94,082.96, for legal research, photocopying, phone and fax charges, travel expenses (including meals, lodging, milage, and parking), filing fee, and courier services was reduced:

> Plaintiff is not entitled to a full recovery. Plaintiff only prevailed on two of five (or forty percent) of the claims it raised. Plaintiff did not prevail on its principal claim.

(*Id.* at 43-44.) The court found that the Authority had not broken down its expenses with sufficient specificity. For example, the Authority failed to "distinguish[] between those costs incurred while litigating against the Federal Defendants

**3**

and those that arose in litigating against Environmental Interveners." In addition, the Authority failed to justify its large copying costs request in light of the Ninth Circuit's rule that "costs do not include extra copies of filed papers, correspondence, and copies of cases since these are prepared for the convenience of the attorneys. [*Haagen-Days Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc.*, 920 F.2d 587, 588 (9th Cir. 1990)]." (*Id*. at 44.) "Copying costs are not recoverable at more than the prevailing commercial rate for copies, between $0.08 (when printing between 1-100 pages) and $0.065 (when printing over 500 pages) per page. Kinko's Copying Center (7654 N. Blackstone Ave.; Fresno, CA)." The Authority was permitted an opportunity to supplement the record with more specific information. (*Id*. at 45.)

As to the requested attorney's fees, the Authority failed to "provide sufficiently specific documentation for the $630,836.50 in legal fees" sought:

> Plaintiff is not entitled to a full recovery of these fees. Plaintiff only prevailed on two of five (or forty percent) of the claims it raised. Plaintiff did not prevail on its principal claim...No more than forty percent (40%) of Plaintiff's fee request should be recoverable.

(*Id*. at 47-48.) Further documentation was required:

> The "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. "The applicant should exercise 'billing judgment' with respect to hours worked...and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id*. Though "there is no certain method of determining when claims are related' or 'unrelated[,]'[and] Plaintiff's counsel...is not required to record in great detail how each minute of his time was expended[,]...counsel should [still] identify the general subject matter of his time expenditures." *Id*. at 437 n. 12.

**4**

> Here, Plaintiff did not specifically document how attorneys' hours were expended. By submitting block billing records, Plaintiff has not distinguished between those attorneys' fees incurred while litigating against the Federal Defendants and those that arose in litigating against Environmental Interveners. By submitting block billing records, Plaintiff also prevents a determination from being made as to whether the tasked hours were reasonably expended for ends in furtherance of the litigation. Plaintiff must provide further particularity.

(*Id*. 47-78.) The attorneys for the Authority billed at hourly rates between $180 and $210 per hour, but the Authority provided no justification for an enhanced hourly rate above the statutory cap of $125 adjusted for inflation. (*Id*. at 48-49.)

The extent of the Authority's success was determined to require further reductions:

> In this case[], Plaintiff did not succeed on its principal claim and was only successful on two of its five claims. Plaintiff should not be allowed to recover legal fees and costs related to the all of their claims. Pending Plaintiff's supplementation of its documentation and Defendants' reply, Plaintiff is entitled to recover less than forty percent of those costs and fees incurred in litigating against Federal Defendants.

(*Id*. at 51.) Finally, the extent to which the Authority's efforts were aimed at parties other than the federal defendants was considered:

> Plaintiff cannot recover from the Federal Defendants costs incurred in litigating against another defendant. Defendants' Opposition at 20-22. Under the EAJA, recovery "may [only] be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity." 28 U.S.C. § 2412(a)(1). The EAJA allows for the recovery of "[f]ees and other expenses" but only from "an agency over which the party prevails." *Id*. at (d)(4). As a result, the prevailing party may not use the EAJA to recover from a private party against whom it prevailed.
>
> In this case, Plaintiff employs a block billing format that contains no distinctions between parties or amounts issued for tasks related to specific issues.

5

>      As a result, Plaintiff has failed to state with
>      specificity which fees and costs were incurred in
>      litigating against the Federal Defendants and which
>      against another party.  Plaintiff is given leave to
>      AMEND its request to indicate specifically which fees
>      and costs were incurred while litigating against the
>      Federal Defendants.

(*Id*. at 52.)  As to the fees claim:

>      This has become the kind of involved litigation within
>      litigation EAJA jurisprudence suggests should be
>      avoided.
>
>      Plaintiffs prevailed on only two of their five claims.
>      They should not recover more than forty percent (40%)
>      of their costs and fees.  Plaintiffs, however, did not
>      prevail on their principal claim.  Because Plaintiffs
>      only partially prevailed, they are only entitled to
>      recover part of their costs and fees: at most between
>      ten percent (10%) and twenty percent (20%).  However,
>      because Plaintiff has failed to specifically document
>      its claims for fees and costs, Plaintiff must provide
>      supplemental information.

(*Id*. at 52-53.)

The Authority timely filed a supplemental memorandum and some additional documentation of the fees and costs billed, requesting "a total of $327,915.02 in CPI-adjusted EAJA fees and costs." (Doc. 569 at 2; Doc. 571.)  The Authority concedes that it is unable to justify an award of fees at an enhanced hourly rate, and accordingly bases its revised calculations on CPI-adjusted EAJA statutory rates.[1]  The Authority also concedes that it is unable to provide all of the supplemental billing documentation requested by the district court.  (*Id*. at 5.)

The Authority maintains that the level of specificity

---

[1] The Ninth Circuit routinely adjusts the $125 EAJA statutory rate to account for cost of living increases, applying the consumer price index for all urban consumers (CPI-U). *Jones v. Espy*, 10 F.3d 690, 692-93 (9th Cir. 1993).  Federal defendants do not object to the calculation of hourly rates on this basis. The hourly rates applied to time billed for non-attorney work also appear to be reasonable.

requested by the district court goes beyond that which is required in the Ninth Circuit. As an alternative to providing supplemental billing documents, the Authority suggests a series of percentage deductions to be applied to various phases of the litigation. Specifically, the Authority suggests breaking down the analysis into the following four phases (1) preliminary injunction phase; (2) after preliminary injunction through motions for summary judgment; (3) offset/reset hearing; (4) fees incurred after offset/reset hearing through Ninth Circuit Decision. For each phase, the Authority detauks the attorney's fees, non-attorney (i.e., paralegals and law clerks) fees, and costs requested. Also for each phase, the Authority provides an estimate of the percentage of fees and costs incurred litigating against the environmental intervenors and a percentage of fees and costs incurred litigating issues on which the Authority did not prevail.

//
//
//
//
//
//
//
//
//
//
//
//

The Authority's revised request is summarized in the following chart:

| Phase | Costs incurred | Percentage attributable to litigation against Environmental Plaintiffs | Percentage attributable to issues on which the Authority was not successful | Cost request reflecting percentage reductions volunteered by the Authority |
|---|---|---|---|---|
| (1) Up to and including Preliminary injunction | $258,210.31 ($233,796.14 CPI-adjusted EAJA attorneys fees, $4,195.75 non-attorney fees, $20,218.42 costs) | 10% | [no percentage reduction suggested] | $232,389.28 ($210,416.52 CPI-adjusted EAJA attorney's fees, $3,776.18 non-attorney fees, $18,196.58 costs.) |
| (2) After preliminary injunction through motions for summary judgment | $253,867.97 ($203,644.39 CPI-adjusted EAJA attorneys fees, $7,192.75 non-attorney fees, $43,030.83 costs) | 10% | 75% | $57,120.30 ($45,819.99 CPI-adjusted EAJA attorney's fees, $1,618.37 non-attorney fees, $9,681.94 costs.) |
| (3) Offset/reset hearing | $16,580.16 ($14,563.18 CPI-adjusted EAJA attorneys fees, $255.00 non-attorney fees, $1,761.98 costs) | 10% | [no percentage reduction suggested] | $14,922.14 ($13,106.86 CPI-adjusted EAJA attorney's fees, $229.50 non-attorney fees, $1,585.78 costs.) |
| (4) After offset/reset hearing through Ninth Circuit Decisions | $130,462.77 ($90,929.04 CPI-adjusted EAJA attorneys fees, $10,462.00 non-attorney fees, $29,071.73 costs) | 10% | 80% | $23,483.30 ($16,367.23 CPI-adjusted EAJA attorney's fees, $1,883.16 in non-attorney fees, $5,232.91 costs.) |
| Total | $659,121.21 | | | $327,915.02 |

The total award sought by the Authority in its revised request, $327,915.02, is approximately 45.23% of its $724,919.46 initial request (which was calculated at enhanced hourly rates) or 49.75% of its $659,121.21 adjusted request (the Authority's

8

1  initial request re-calculated at EAJA rates[2]).  Notably, the
2  Authority attempts to re-frame the extent of its success (or lack
3  thereof) by arguing that it should be treated as having
4  experienced significant success during the first phase of the
5  litigation, up to and including the issuance of the preliminary
6  injunction and, accordingly, no deduction for lack of success
7  should be applied to that phase of the case.

8  Federal defendants object to the revised fee request on
9  several grounds.  (Doc. 572.)  First, the federal defendants
10 argue that "the Authority has totally failed to comply with the
11 Court's directive" to provide more detailed billing information,
12 and, as a result, the federal defendants maintain that the
13 district court should either deny all fees and costs in their
14 entirety or award at most "between ten percent (10%) and twenty
15 percent (20%)" of the fees requested.  (*Id.* at 2, quoting the
16 preliminary decision on the Authority's fee petition.)  Second,
17 the federal defendants urge the district court to reject the
18 Authority's attempt to recharacterize the extent of its success
19 during the preliminary injunction phase of the case.

20 On October 24, 2005, the water authority plaintiffs moved
21 for leave to file a supplemental complaint concerning the
22 Interior's accounting of the 2004 water year.  (Doc. 623, Motion;
23 Doc. 634, Joinder.)  The federal defendants and environmental
24 plaintiffs opposed.  (Docs. 629 and 630.)  In their opposition,

---

[2] This figure, $659,121.21, equates to $565,038.25 in fees calculated at the EAJA statutory rate plus $94,082.96 in costs.  This represents a recalculation of the Authority's initial request of $724,919.46, which equates to $630,836.50 in legal fees at enhanced hourly rates plus $94,082.96 in costs.

9

the federal defendants suggested that it might be inappropriate to rule on this fee petition if the court granted leave to file a supplemental complaint. However, at oral argument on the motion to supplement, all parties agreed that it is appropriate to resolve the instant fee petition, in part because it concerns claims for which partial final judgment has been entered and the appeals process is concluded.

## III.  ANALYSIS

The Authority's fee petition has been extensively analyzed in the previous memorandum decision (Doc. 567). No party has moved for reconsideration of its reasoning or conclusions. Only those issues left open by the previous opinion and addressed by the supplemental briefs are now resolved.

### A.  Extent of the Authority's Success.

A court may reduce a fee award where the plaintiff only received partial or limited success. *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)). A prevailing party is "not entitled to compensation for attorney's fees for time expended unsuccessfully pursuing claims unrelated to those on which plaintiff ultimately prevailed." *Hensley*, 461 U.S. at 434-35. A court may reduce a fee award if the significance of the overall relief obtained is not consistent with the hours expended to obtain that relief. *Sorenson*, 239 F.3d at 1147. The Ninth Circuit applies a two step analysis where the plaintiff only partially prevailed.

**10**

### Part I

> The first step is to consider whether "the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded." *Id.* [*Hensley*, 461 U.S.] at 434. Claims are "unrelated" if they are "entirely distinct and separate" from the claims on which the plaintiff prevailed. *Odima* [*v. Westin Tucson Hotel*], 53 F.3d 1484, 1499 [(9th Cir. 1995)]. Hours expended on unrelated, unsuccessful claims should not be included in an award of fees.

### Part II

> The second step of the *Hensley* analysis is to consider whether "the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* [*Hensley*, 461 U.S.] at 434. In answering that question, a district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* A plaintiff may obtain excellent results without receiving all the relief requested. *Id.* at 435 n.11.

*Sorenson*, 239 F.3d at 1147.

Here, as discussed above, the Authority suggests breaking the litigation into phases to analyze the extent of its success. Such a phased approach was applied to environmental plaintiff's fee petition and is equally applicable here.

The Authority first argues that it should be fully compensated (less a voluntary 10% deduction to account for time spent litigating issues raised by the environmental plaintiffs) for the work its counsel performed during the initial phases of the case, which extended from the initiation of the lawsuit in November 1997, through the first round of summary judgment motions, up to and including the issuance a preliminary

**11**

injunction in December 1999. The Authority did experience substantial success during the early stages of the litigation. Its first motion for summary judgment was granted as to a number of significant issues; Interior's 1997 Administrative Proposal was found to be contrary to the CVPIA; and the question of (b)(2) compliance was remanded to Interior for further administrative action. (*See* Doc. 156.)

The Authority was far less successful, however, during later stages of the case, prevailing only on a few discrete accounting issues, and, critically, failing to succeed in the district court or the Ninth Circuit on its fundamental assertion: that the 1928-34 drought regime should be the measuring standard for yield calculation.

Viewing the entire litigation as a whole, an across-the-board deduction to <u>all</u> of the Authority's attorneys hours throughout the entire litigation could be justified, including those billed for the initial stages of the case. *See Sorenson*, 239 F.3d at 1147 (the fee award "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation"). However, in the overall context of this litigation, it is more reasonable to view the Authority's and environmental plaintiff's initial challenges to Interior's Administrative (b)(2) Accounting Proposal as a stand-alone phase of the litigation. The Authority's significant success at this initial stage justifies not further reducing its fees for limited success. (However, the hours billed for this phase of the case are excessive and will be reduced on that ground.)

The Authority also requests essentially full compensation (less the same 10% deduction for time spent litigating issues raised by the environmental plaintiffs) for time spent litigating the offset/reset issue.  At the same time, to account for its limited success at other stages, the Authority has voluntarily reduced its fee request by an additional 75% for time spent from the issuance of the preliminary injunction through the second round of motions for summary judgment (December 23, 1999 through October 2001) and an additional 80% for the time spent on all subsequent litigation following the offset/reset hearing.  In total, the Authority has voluntarily reduced its initial request of $400,910.90 for the final three phases of the litigation ($253,867.97 for the second phase + $16,580.16 for the third + $130,462.77 for the fourth) to $95,525.74 ($57,120.30 for the second phase + $14,922.14 for the third + $23,483.30 for the fourth), a reduction of more than 75 percent.  No further reductions for limited success are warranted, although additional deductions are appropriate on several other grounds, as discussed below.

**B.    Fees:  Adequacy of Documentation/ Excessive Billing**.

"Where the documentation of hours is inadequate, the district court may reduce the award accordingly.  The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'"  *Sorenson*, 239 F.3d at 1146 (quoting *Hensley*, 461 U.S. at 433-34).

**1.    Adequacy of Fee Documentation.**

The previous memorandum decision regarding the Authority's fee request concluded:

> In this case, [the Authority] employs a block billing format that contains no distinctions between parties or amounts issued for tasks related to specific issues. As a result, Plaintiff has failed to state with specificity which costs were incurred litigating against the Federal Defendants and which against another party.

(Doc. 567 at 52.)  The Authority was given leave to amend its petition to "indicate more specifically which fees and costs were incurred while litigating against the Federal Defendants." (*Id.*)

The Authority, in its supplemental memorandum, essentially concedes that it cannot provide additional individual time records that would indicate the tasks included within each block-billed entry.  Instead, the Authority offers an alternative means to address the district court's primary concern with block billing of fees, suggesting a 10% across-the-board deduction to account for time spent litigating against the environmental plaintiffs.  This is a reasonable deduction to account for time spent litigating issues raised by the environmental plaintiffs. A similar deduction was applied to some phases of work performed by the environmental plaintiffs.  (*See* Doc. 641.)[3]

The federal defendants vehemently object that "the Authority has totally failed to comply with the Court's directive...." But, the Authority's supplemental filing <u>has</u> addressed the district court's primary concern with the apparent block billing of fees: the problem of distinguishing between compensable fees

---

[3] For several stages of the litigation, environmental plaintiffs were required to deduct more than 10% to account for time spent litigating issues raised by the Authority, e.g., additional deductions for a certain phase was required to account for time spent litigating American River Flows issues. (Doc. 641 at 61-62.)  Here, no party has argued for similarly large deductions with respect to the Authority's fee request.

**14**

incurred litigating against the government and non-compensable fees incurred litigating against other parties.  The 10% across-the-board reduction, combined with additional deductions for excessive billing, results in a lawful and reasonable fee award. The billing records are otherwise complete and sufficiently detailed.

### 2.  **Excessive Billing of Fees**.

Although the general framework of percentage deductions suggested by the Authority is reasonable, the number of hours billed is excessive in one respect.  The Authority was billed 1,763.15 hours in attorney time for the first phase of the case, a 25 month period from November 1997 through December 1999.  In contrast, although it is difficult to discern from the record an exactly parallel figure, the environmental plaintiffs' hour award for this same period of time appears to be slightly more than 1000 hours.[4]  This almost 60% disparity in the initial phase of the case is unexplained and reflects excessive billing, warranting a 40% reduction for all attorney and non-attorney hours billed during this phase of the litigation.  (This equates, essentially to an award of attorneys fees for 60% of 1,763.15 hours, or 1057.8 hours, only slightly more than that billed by

---

[4]  This 1000 hour figure was calculated by adding up the hours recorded by Ms. Koehler and Mr. Peters from November 1997 through December 1999 as set forth in their billing records as Exhibits A and B to the Koehler Declaration.  Although the environmental plaintiffs did benefit from pro bono attorney assistance unavailable to the Authority, the environmental plaintiff's fee request is still a valuable benchmark for reasonableness.

**15**

the environmental plaintiffs over the same time period.)

The number of hours billed for the later phases of the case is more reasonable in light of the complexity of the issues raised. For the second phase, a 20 month period which included a second round of complex summary judgment motions, the Authority was billed 1,460.35 hours of attorney time. For the five month span of the third phase, the Authority was billed 102.4 hours of attorney time, and for the seventeen-month fourth phase, the Authority was billed 624.40 hours of attorney time. The total number of hours billed for the latter three phases of the case is 2187.15, extending over a forty-two month time span.

The total of the hours billed to the Authority for all four phases is over 3900 hours in attorney time alone, before any deductions. By way of comparison, the environmental plaintiffs billed 2989 hours of attorney time on merits work during the course of the entire litigation (*see* Koehler Decl. at 13:18), before any deductions. The 40% deduction for excessive billing during the first phase of the case brings the Authority's total billed time down to just over 3200 hours (before any further deductions), much closer to the total number of hours billed by the environmental plaintiffs. No further deduction for excessive billing is warranted.

//
//
//
//
//
//

**16**

**C.   Costs: Adequacy of Documentation/ Excessive Costs**.

The lack of specificity contained within the Authority's documentation of its claimed costs makes it impossible to determine which costs are compensable and which are not under prevailing Ninth Circuit standards.  The Authority argues that the bar is being set too high for costs documentation, citing *International Woodworkers of America, AFLCIO v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1986), in which the Ninth Circuit advanced a liberal view of the types of costs which may be included in an EAJA award.  Although *International Woodworkers* did expand the scope of the EAJA costs provision to include many types of costs not specifically enumerated in the statutory text, it in no way diminishes a prevailing party's obligation to document whether particular billed costs are reasonably connected to the litigation.  Here, it is not possible to do so with any accuracy.

The amount of the costs for which the Authority seeks reimbursement is almost ten times that of the environmental plaintiffs, who seek less than $4,500 in attorney and expert costs combined.  The Authority originally sought over $94,000.00 in costs, before any deductions.  Such a figure is not reasonable, even for litigation of this length and complexity. The problem is compounded, however, by the fact that the billing records make it impossible to specifically parse the reasonableness of any given billed cost.  The Authority only be awarded 25% of its billed costs.

//
//
//

**D.  <u>Recalculated Award</u>**.

<u>Phase 1</u>: This phase is subject to a 40% deduction of the fees (both attorney and non-attorney fees) to account for excessive fee billing, a 75% deduction of costs to account for excessive cost billing, along with an across-the-board deduction of 10% to account for time spent litigating issues raised by the environmental plaintiffs.  The original attorney and non-attorney fee request for this phase was $237,991.85 ($233,796.14 CPI-adjusted EAJA attorneys fees, $4,195.75 non-attorney fees).  A 40% deduction results in $142,795.11 in attorney and non-attorney fees.  After a 75% deduction, the original cost request of $20,218.42, is lowered to $5054.61.  Applying the additional 10% deduction to the sum of these two figures, $147,849.72, results in a final award for the first phase of $133,064.77.

<u>Phase 2</u>: This phase is subject to a 75% deduction of costs to account for excessive cost billing, along with an across-the-board deduction of 10% to account for time spent litigating issues raised by the environmental plaintiffs, followed by a voluntary across-the-board deduction of 75% to account for lack of success on the merits.  Applying the 75% deduction to the original costs request of $43,030.83 results in a costs award of $10,757.71.  The sum of this adjusted cost award and the original attorney and non-attorney fee request is $221,594.85.  Applying the further 75% and 10% deductions results in a final award for this phase of $49,858.84.

<u>Phase 3</u>:  This phase is subject to a 75% deduction of costs to account for excessive costs, along with an across-the-board deduction of 10% to account for time spent litigating issues

**18**

raised by the environmental plaintiffs. Applying the 75% deduction to the original costs request of $1,761.98 costs results in a costs award of $440.50. The sum of this adjusted cost award and the original attorney and non-attorney fee request is $15,258.68. Applying the 10% voluntary deduction results in a final award for this phase of $13,732.81.

Phase 4: This phase is subject to a 75% deduction of costs to account for excessive cost billing, along with an across-the-board deduction of 10% to account for time spent litigating issues raised by the environmental plaintiffs, followed by a voluntary across-the-board deduction of 80% to account for lack of success on the merits. Applying the 75% deduction to the original costs request of $29,071.73 results in a costs award of $7,267.93. The sum of this adjusted cost award and the original attorney and non-attorney fee request is $108,658.97. Applying the further 85% and 10% deductions results in a final award for this phase of $19,558.61.

For all four phases, the total award will be: $216,215.03. This equates to approximately 29% of the Authority's initial $724,919.46 initial request (which was calculated at enhanced hourly rates) or 32% of its $659,121.21 adjusted request (the Authority's initial request re-calculated at EAJA rates). The preliminary decision noted that the Authority "prevailed on only two of [its] five claims" and concluded that it "should not recover more than forty percent (40%) of their costs and fees." In the concluding paragraph, the district court did qualify its previous 40% figure, reasoning that "[b]ecause Plaintiffs only partially prevailed, they are only entitled to recover part of

**19**

their costs and fees: at most between ten percent (10%) and twenty percent (20%)." (*Id.* at 52-53.)  On further reflection, given the more substantial success experienced by the Authority at the earliest stage of the case, the award of $216,215.03, which is admittedly higher than 20% ceiling suggested by the concluding paragraph in the preliminary decision, is just and reasonable.

## IV.   CONCLUSION

For the reasons stated above and in the previous preliminary memorandum decision and order (Doc. 567), federal defendants shall remit to the Authority's fees counsel, $216,215.03 for EAJA attorneys fees and costs.

**SO ORDERED.**

Dated: June 6, 2006                    /s/ OLIVER W. WANGER

_____
**Oliver W. Wanger**
**UNITED STATES DISTRICT JUDGE**